# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DONNY WOODS, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-11-2831 |
| | : | |
| ALLIEDBARTON SECURITY SERVICES LLC, et al. | : | |

## MEMORANDUM

Now pending is the plaintiffs' motion for leave to file an amended complaint.  Plaintiffs Donny Woods, Patricia Woods, and Khaleeya Pittman originally brought this suit for various state law causes of action in the Circuit Court for Baltimore City against security guard Stephen Krocheski, AlliedBarton Security Services LLC, ("AlliedBarton"), and Inland US Management LLC ("Inland US").  After the plaintiffs failed to serve Mr. Krocheski and he was dismissed as a defendant by the Maryland state court, the remaining two defendants removed the case to this court based on diversity of citizenship under 28 U.S.C. § 1332.  Plaintiffs now move for leave to file an amended complaint to rejoin Mr. Krocheski.  Defendants have filed a response brief in opposition.  No hearing is necessary.  *See* Local Rule 105.6.  For the following reasons, the plaintiffs' motion for leave to file an amended complaint will be granted, and this case will be remanded to the Circuit Court for Baltimore City.

## BACKGROUND

This suit stems from an incident at the Reistertown Road Plaza mall and shopping center

(the "Mall") between the plaintiffs and Mr. Krocheski, a mall security guard.  According to the plaintiffs, Inland US provides management services at the Mall and hired AlliedBarton to provide security.  Mr. Krocheski was an employee of AlliedBarton.  The plaintiffs are an African-American and Muslim family and contend they have been patrons of the Mall for years. On December 10, 2010, the plaintiffs entered the mall to go shopping and were approached by Mr. Krocheski, who allegedly ordered Ms. Woods to remove her traditional Muslim headgear, which he called a "hoodie."  When Ms. Woods declined to do so, Mr. Krocheski allegedly threatened to forcefully remove her from the Mall.  A supervisor intervened, however, and instructed Mr. Krocheski that Ms. Woods was free to wear her traditional headgear in the Mall.

Approximately twenty minutes later, according to the plaintiffs, Mr. Krocheski approached the Woods family again, yelling racial slurs and religious insults.  Mr. Krocheski then "brandished a knife and pointed it at Mr. Woods while violently yelling, amongst other things, 'Come on . . . come on . . . I have not tasted blood in a long time.'"  (Compl. ¶ 13, ECF No. 2.)  Other security guards eventually restrained Mr. Krocheski, and, presumably, removed him from the premises.  On January 26, 2011, Mr. Krocheski pleaded guilty in the District Court for Baltimore City to criminal charges of second degree assault and assault with a dangerous weapon.

The plaintiffs allege Mr. Krocheski's actions "placed them in mortal fear for their lives" and that, among other ongoing trauma, five-year old Khaleeya has "suffered from . . . nightmares and trouble sleeping, loss of appetite, episodes of panic regarding the safety of her family."  (*Id.* at ¶¶ 16, 30.)  On March 29, 2011, the plaintiffs brought this suit against Mr. Krocheski, AlliedBarton, and Inland US.  The complaint alleges Mr. Krocheski is liable for assault,

intentional infliction of emotional distress, defamation, and negligence, and it alleges AlliedBarton and Inland US are liable based on theories of *respondeat superior* and negligent hiring and/or retention.  The plaintiffs demand twelve million dollars in compensatory and punitive damages, jointly and severally, from the defendants.

After their initial filing, the plaintiffs successfully served AlliedBarton and Inland US with summons and copies of the complaint, but were unable to successfully serve Mr. Krocheski. On August 5, 2011, the clerk of the court issued a warning that the proceeding would be dismissed for lack of jurisdiction without prejudice as to Mr. Krocheski unless a written motion showing good cause to defer was filed within thirty days.  The plaintiffs failed to respond, and on September 9, 2011, Mr. Krocheski was dismissed from the case.

On October 3, 2011, AlliedBarton and Inland US filed a notice of removal, alleging Mr. Krocheski's dismissal had given this court diversity jurisdiction over the suit.  Both the plaintiffs and Mr. Krocheski are residents of Maryland.  AlliedBarton and Inland US are both Delaware limited liability companies, and the companies allege that neither is a resident of Maryland for the purposes of determining diversity jurisdiction.  Thus, once Mr. Krocheski was dismissed from the suit, the companies became entitled to remove the case to federal court based on 28 U.S.C. §1332.

The following day, on October 4, 2011, the plaintiffs obtained a re-issued summons from the Baltimore City Circuit Court; they successfully served Mr. Krocheski on October 5, 2011. On the basis of this service, plaintiffs moved to remand the suit to state court.  On December 20, 2011, this court denied the motion to remand, holding that service was improper because the case had already been removed and the state court lacked jurisdiction to re-issue the summons.

On January 13, 2012, the plaintiffs filed the instant motion for leave to file an amended complaint, and they attached a proposed amended complaint rejoining Mr. Krocheski as a defendant.  AlliedBarton and Inland US have filed a response brief in opposition.

## ANALYSIS

Where, as here, a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with the language of the federal statute 28 U.S.C. § 1447.  *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).  Section 1447(e) provides the district court with two options: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).  The statute "does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Mayes*, 198 F.3d at 461.

In exercising the discretion afforded to it by § 1447(e), a district court, "with input from the parties, should balance the equities."  *Mayes*, 198 F.3d at 463 (citing *Gum v. General Elec. Co.*, 5 F. Supp. 2d 412, 414 (S.D. W.Va. 1998)).  In doing so, the court may consider (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," (2) "whether the plaintiff has been dilatory in asking for amendment," (3) "whether the plaintiff will be significantly injured if amendment is not allowed," and (4) "any other factors bearing on the equities." *Mayes*, 198 F.3d at 462 (citations omitted).  Courts also consider "the danger of parallel suits in state and federal courts, resulting in inconsistent results and judicial inefficiency, and the defendant's interest in a federal forum." *McCaulley v. Purdue Pharma, L.P.*, 172 F.

Supp. 2d 803, 806 (W.D. Va. 2001) (citing *Coley v. Dragon Ltd.*, 138 F.R.D. 460, 465 (E.D. Va. 1990)).

In weighing whether the purpose of the amendment is to defeat federal jurisdiction, courts may take into consideration whether the plaintiff has a substantive claim against the party to be joined.  If the defendant has no legitimate cause of action at all, or the cause of action is significantly less strong than the claims against the existing defendants, then a court may infer the impermissible purpose of forum shopping.  For example, in *McCaulley* the court noted that "at best" only one out of five plaintiffs had any claim against the nondiverse party, and that the defendants had argued "with some merit" that even the one plaintiff had no cause of action.  172 F. Supp. 2d at 810.  Without going so far as to decide the ultimate merits of the claims, the court concluded that the "arguable" nature of the claims against the party to be joined was sufficient to convince the court that the plaintiffs "were scrambling for a Virginia resident to sue and did their best to squeeze [the party at issue] into existing causes of action."  *Id.*[1]

AlliedBarton and Inland US can make no such argument about the Woods family's claims against Mr. Krocheski.  Because Mr. Krocheski was the individual who carried out the alleged tort, it stands to reason that the claims against him are the strongest of any of the claims originally brought in the state case.  It was Mr. Krocheski who pleaded guilty to the criminal assault that gave rise to this suit.

Speaking to both the first and second factors, AlliedBarton and Inland US argue

---

[1] To be relevant in this analysis, the weakness of the claims against the party to be joined need not meet the "strict fraudulent joinder standard" of "demonstrating that there is no possibility of success."  *McCaulley v. Purdue Pharma, L.P.*, 172 F. Supp. 2d 803, 810 (W.D. Va. 2001).  That said, if a defendant can "carry the heavy burden of proving fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant" after removal has already occurred.  *Mayes v. Rapoport,* 198 F.3d 457, 463 (4th Cir. 1999).

vigorously that the timing of the plaintiff's motion for leave to amend indicates the motion is motivated by their desire to avoid federal jurisdiction.  Where, as here, "a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."  *Mayes*, 198 F.3d at 463 (citing *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990)).  In such a situation, "[t]he timing raises a red flag that the plaintiff may be forum shopping."  *McCaulley*, 172 F. Supp. 2d at 806; *see also Newman v. Motorola, Inc.*, 218 F. Supp. 2d 783, 787 (D. Md. 2002) (noting the second and first factor coincide where "no attempt was made to add the nondiverse defendant until after removal" even though the relevant facts "were in the possession of the plaintiffs well before suit was filed").

As AlliedBarton and Inland US recount, the original summons for Mr. Krocheski expired on May 30, 2011.  Yet, the plaintiffs did not attempt to secure a new summons with which to serve Mr. Krocheski until October 4, 2011, the day after the case was removed to this court.  And, defendants note, this failure occurred despite the Circuit Court's August 5, 2011, warning that Mr. Krocheski would be dismissed for lack of jurisdiction if the plaintiffs failed to act.  Only after defendants removed the case to this court did the plaintiffs take immediate action to attempt to rejoin Mr. Krocheski.

The fact pattern here, however, is different from that in the cases defendants rely on.  Unlike in *Mayes* or *McCaulley*, the party to be joined is not new to the suit.  The plaintiffs originally sued Mr. Krocheski in state court, in the same complaint bringing suit against AlliedBarton and Inland US.  Put simply, the plaintiffs' original actions demonstrate that they

were interested in suing Mr. Krocheski long before this case was removed to this court and removal or remand was at issue.  The plaintiffs' efforts to rejoin him now hardly provide the same basis for an inference of impermissible purpose as in cases where the nondiverse defendant is entirely new to the suit.

Given the plaintiffs' initial interest in bringing suit against Mr. Krocheski, the court is disinclined to interpret the dilatory nature of plaintiffs' actions as a dispositive marker of forum shopping.  Defendants fail to allege, and the court fails to see, any substantive legal reason why plaintiffs would have wanted to drop Mr. Krocheski from the suit in the wake of their first failed attempt.  And if no reason existed for the lapse, the most plausible inference is that the Circuit Court's dismissal of Mr. Krocheski "without prejudice" lulled plaintiffs' counsel into believing he had time to rectify the situation before trial.  In such a situation, the proper action is the one taken here—for the plaintiffs to attempt to immediately notify this court of the mistake and to attempt to rejoin the defendant before taking otherwise unnecessary and duplicative measures in federal court.

Turning to the third factor, the court finds that the plaintiffs will be injured if the amendment is not allowed.  As discussed above, the plaintiffs' strongest case may well be their case against Mr. Krocheski.  Without Mr. Krocheski as a defendant, the plaintiffs would still be able to pursue relief from AlliedBarton and Inland US.  But doing so may be more challenging and may lack the same value of also holding Mr. Krocheski directly responsible for his actions.

After considering prejudice to the plaintiffs, the court must pay close attention to defendants' interests when reviewing "any other factor bearing on the equities."  As the Fourth Circuit has explained, the removal procedure is not meant to favor plaintiffs or defendants, but

rather to be "fair to both plaintiffs and defendants alike." *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 927 (4th Cir. 1992) (quoting the district court below).

The defendants have a fundamental interest in retaining a federal forum. "[B]y providing for removal in the first place, Congress seems to believe that the defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice." *Id.* And, in addition to crediting defendant's interest in the federal forum, the court may also consider whether the defendants will suffer "any undue prejudice . . . from the decision to allow joinder and remand." *Dobbs v. JBC of Norfolk, VA, Inc*., 544 F. Supp. 2d 496, 501 (E.D. Va. 2008) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). In doing so, the court considers whether the joinder was foreseeable to the defendants, and therefore whether they had been "put . . . on notice that nondiverse defendants may be joined and the action remanded according to § 1447(e)." *Id.*; *see also Murray v. State Farm Fire & Cas. Co.*, 870 F. Supp. 123, 126 (S.D. W.Va. 1994) (finding no prejudice to the defendants where the plaintiffs sought leave to amend their complaint to include a nondiverse defendant whom it was clear they meant to include from the outset of the action).

Here, the plaintiffs' intention to name the nondiverse party as a defendant to the suit has been clear from the outset of this case. AlliedBarton and Inland US were on notice that the suit could properly be heard in state court. The plaintiffs' attempt to remand thus fulfills an original expectation and does not somehow catch defendants off guard or promise to expand their liability. *See Dobbs*, 544 F. Supp. 2d at 501 (finding defendant would not be unduly prejudiced because, among other reasons, the plaintiff did not seek to modify his existing claims or bring any new claims against the defendant). In moving now to rejoin Mr. Krocheski, the plaintiffs

8

thus create no undue prejudice to AlliedBarton and Inland US beyond, arguably, the cost of litigating removal and remand.

Finally, the court must consider "the danger of parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources." *Mayes*, 198 F.3d at 463 (internal quotation marks omitted).  If plaintiffs are unable to join Mr. Krocheski to this case, they will be free to bring suit against him in state court.  Though this reduces somewhat the injury to plaintiffs' interest from a denial of joinder, the result would be the kind of parallel litigation the Fourth Circuit has cautioned against.  If joinder is denied and a separate state proceeding brought against Mr. Krocheski, "it is very likely that both a state court and this court would have to resolve issues surrounding what, if any, liability for [his] actions is imposed on [the federal defendants] under the doctrine of respondeat superior." *Dobbs* 544 F. Supp. 2d at 501.

In sum, after giving careful consideration to the record in this case and to the arguments of the parties, the court concludes that plaintiffs should be allowed leave to amend the complaint because the balance of equities favors a decision to rejoin Mr. Krocheski as a defendant.

## ANALYSIS

For the foregoing reasons, plaintiffs' motion for leave to file an amended complaint will be granted.  Because Mr. Krocheski is a resident of Maryland, his joinder destroys complete diversity among the parties.  As a result, this court will no longer have subject matter jurisdiction, and the case must be remanded to the Circuit Court of Baltimore City for further proceedings.

A separate order follows.


February 9, 2012                                                /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge